Department of Corrections v. Jordan et al., Mr. Craig. Thank you, Your Honor. Please, the Court. We are here to enforce a third-party subpoena that was issued pursuant to a federal civil rights action in the Southern District of Mississippi between our clients, who are two death-sentenced prisoners in Mississippi, and officials of the Mississippi Department of Corrections challenging their method of execution in that state. We subpoenaed the Department of Corrections in Virginia to provide documents and deposition testimony relevant to our position in Mississippi. The Department of Corrections responded and produced some documents in request for a subpoena, but then filed a motion to quash with respect to the remaining materials which they had identified. There are three specific areas I would like to address in the time that I have. Obviously, the briefs will include more, and I'm here to answer any of the Court's questions. But the three points that I most want to cover that demonstrate the District Court's abusive discretion in granting the motion to quash, the first is the Virginia Department of Corrections' purchase of pentobarbital from Texas in 2015. The second is the denial of testimony by 30B6 deposition by officials of the Department regarding the documents already produced by the Department. And then third, documents related to five... They gave you quite a bit of stuff, did voluntarily. They gave a fair amount of material. That's correct, Judge Agee. But they did not give material related to the purchase of lethal injection drugs, and that included the transaction between Texas and Virginia in 2015. They did not provide documents related to the five Virginia executions, which is listed... Those documents are listed in our brief. How is that relevant to what you want to show in Mississippi? Yes, Your Honor. In terms of the first level of documents, one of the main issues in the Mississippi case is whether pentobarbital is an available drug for use in executions in Mississippi. That's the second prong of the Supreme Court's test in Glossop against Gross. In 2015, the VDOC received pentobarbital from Texas, and the Department actually produced testimony from hearings in cases here in Virginia relative to that transaction. That transaction is directly relevant to our claim that pentobarbital is available because Texas still has pentobarbital. It has continuously been able to receive and to compound pentobarbital. So what do you say about the District Court's statement and its opinion that one of the problems they've had with your position is your own failure to reveal what information you have obtained and discovery from the Mississippi Department of Corrections in the underlying litigation? I don't know that anyone asked us to provide that information, Your Honor, but we certainly don't have information about the transaction between Texas and Virginia in 2015. In fact, the Mississippi Attorney General was requested in the hearing on our motion for preliminary injunction in Mississippi how it was that Texas had and was able to transfer pentobarbital to other states, and the Mississippi Attorney General said he didn't know. And the question, the very critical question here, unlike in a lot of these lethal injection challenges, Mississippi, we are suggesting, should use a single lethal dose of pentobarbital. And that's it. That's what Texas does. That's what Georgia does. That's what Missouri does. Not what Virginia does. It is not what Virginia does, Your Honor. However, Virginia has been able to obtain pentobarbital in 2015 right in the middle of two different sets of attempts that Mississippi claims to have made to secure pentobarbital, including from Texas and from Virginia. That's in Mississippi's answers to interrogatories. And we provided, we actually did provide, in response to the motion to quash, a lot of information about what was happening in Mississippi. And the question of whether these. What is it exactly you want to know? We want to know when Virginia received drugs from Texas in 2015, what were the terms and conditions of that transaction? How did it matter? If you already know that they got them, right, why does it matter to the Mississippi if they paid $5, $10, $1,000, if they had to stand on one foot, wear a sombrero, whatever the terms were? Why does that matter in Mississippi? For each of those conditions, including the sombrero, Your Honor, if that is what it took for Texas to be willing to provide pentobarbital to Virginia, then it is available to Mississippi if it's a matter of money, for example. Have you asked Texas for this information? We have subpoenaed Texas as well, Your Honor. But I think we're entitled to know. We don't have the information from Texas either. Pardon me if I'm anticipating a question. But I think in any commercial transaction you want information from, you want information from both parties. Okay, but in weighing abuse of discretion, it seems to me we've got to consider a lot of things. What you got and what you didn't get, and whether what you didn't get was relevant to Virginia's death penalty scheme. Yes. And how would information, it seems to me you've got to tell us that the court abused its discretion by not requiring further information from Virginia. And I haven't heard that yet. I've heard what you want, what you're interested in as far as Mississippi. You want the pentobarbital. You want the single dose. But what did Virginia not give you that Virginia should have given you? Virginia did not give us information, the exact information Judge Richardson is talking about. What did it take for Texas to be willing to produce pentobarbital? What do you take? Purchase price? Is that what you're saying? I don't know. Conditions of dispensing? Well, it could be any number of things. It could be because we don't know the details of the transaction at all. Right, but how can we say abuse of discretion? Excuse me just one second. I'm sorry. How can we say abuse of discretion if it sounds like you're asking for the kitchen sink with regard to Texas and Virginia's interaction? Do you see what I'm saying? I do. If you're just asking for everything, how can we say that's an abuse of discretion to deny? I don't think it's very much, Your Honor, but it is significant information. The reason I say that is because we do have the testimony, pardon me, that was provided by Virginia in response to our subpoena of the officials of Virginia Department of Corrections in cases here in Virginia in which they gave very, very broad, I would say 50,000-foot level responses to questions about that transaction. Now, keep in mind we're talking about one transaction, but it's a highly significant transaction because it does not involve private lethal injection drug suppliers. It involves a party, the state of Texas, that we know has pentobarbital as recently as last month when they executed somebody with it. That seems to be considerably narrower than what you ask for as shown on pages 20 and 24 of the appendix, and 22 and 23 as recited by the district court, because almost all of that seems to be oriented to getting the identities of the execution team and the name and address of the manufacturer, and you didn't seem to limit what you wanted hardly at all. Your Honor, we did not ask for information of the identities of Virginia's execution team. It looks like to me, reading on page 20, almost every one of these where you ask for all documents, all drug labels, all documents, all documents, all documents, all documents, that all communications of just about every one of those would have included that. I believe our response to the motion to quash made clear that we did not object  But it's your burden to follow Judge Keenan's question on showing abuse of discretion and under the terms of the rules for a subpoena to narrowly focus it, and I'm not seeing where you narrowly focused it to cover what you're asking for today. I beg to differ, Your Honor. I do believe in our response to motion to quash, we made clear that there were different categories of documents that we were seeking, and I do think it is a broad subpoena, but I don't think it was overly broad. They were capable of responding to it, and the documents they listed on their privilege log that they were withholding is 50 pages or less. Let me ask you one question, and you don't even have to answer it now. You can answer it when you come back up. Assuming that we agreed with you on some narrow sort of subset of the documents, talk to me just a second about the 11th Amendment issue, that you sort of distinguish barren oil by saying, well, it's different for the state versus the feds, right? And anything that seems like the opposite, because the 11th Amendment specifically refers to sovereign immunity of the states, the federal sovereign immunity is more a structural issue that we sort of, you know, pull out of the Constitution. So why is it that that distinction, you just sort of identify it, but you don't explain why that distinction would matter. So why would it be that we would look at barren oil and say, oh, well, that applied to federal immunity, but we're not going to apply it to state simply, and the only distinction you give us is, well, states and feds are different. Yes, Your Honor. I will very briefly answer and then perhaps in rebuttal if there's time for it. I think there are two points. One is because there is no opinion of a court of appeals that addresses or that considers the 11th Amendment to cover subpoenas for documents or testimony in a federal civil rights case, or actually I think in any case, and we discussed that. So part of it is a simple distinction, that that would mean this would be a case of first impression or not even first impression. It would be contrary to, I think, the Second Circuit and certainly the Eighth Circuit. So that's one issue. You're asking a doctrinal question. I'm asking a different question. Yes, I get that, but I just wanted to make that point. I think it makes a difference, Your Honor, because of the necessity in a federal civil rights case to determine the facts in a federal civil rights case that a state government ought not to have the power under the 11th Amendment. That doesn't distinguish between state and federal. So if there's a state civil rights action and they want federal documents, that justification you just gave is like civil rights cases are really important, and I agree, let me assure you. Yes. But that doesn't distinguish the direction that we're going. So Barron Oil says a state, no matter how important the case, civil rights, like little kids, puppies, doesn't matter. The state can't go get documents from the feds because of sovereign immunity. And so I want to flip it around. I want you to tell me why it matters that the fed, the federal court is allowed to go to the state to get the same documents, merely is the only distinction you're making is, well, these are really important documents? Because that doesn't seem to matter in Barron Oil. I think it does matter just by analogy, for example. The 11th Amendment does not bar injunctive or declaratory relief against state officials. You don't have a state official in this case. Maybe we can have a different discussion about whether that would be permissible, but that's not what you did. That's correct, Your Honor. We issued a subpoena against a state agency under 30B-6. Our position is that there is a difference between a state litigant seeking documents from the federal sovereign, which is because it's not particularly governed by the 11th Amendment, is unlimited so far as we're concerned. And the 11th Amendment, which is plainly not unlimited. You don't think federal immunity is unlimited, right? It's not. I take that back, Your Honor. I appreciate that. Let me just say that I think that the 11th Amendment in a civil rights case against a state government should not prohibit discovery against other coordinate state governments, because otherwise... Is there any reason why the 11th... I mean, I get that's a good policy. Maybe we'll answer it on the back end. I understand the policy, right? That civil rights case is really important. When we come back up, if you can, and if you can't, that's fine. We'll try to figure it out. But help me understand, from the 11th Amendment state sovereign immunity perspective, not a policy argument, but state sovereign immunity perspective, why there should be a difference between the state and fed. I'll do my best, Your Honor. May I just... I think I have 28 seconds remaining on this half, on this piece. Let me just make sure I have mentioned in my opening argument that we had also asked for deposition testimony, so that even if there were no other documents that we were permitted to receive on the basis of our subpoena, we should be able, at a minimum, to ask questions of the people who produced the documents about the documents. And I don't want to take up too much more of my rebuttal, so I'll leave it be with that. Thank you, Your Honor. Thank you very much. Ms. O'Shea? Let me get my materials back. You're welcome to do that. Good morning. Margaret O'Shea on behalf of the Virginia Department of Corrections. Let me ask you right off on the 11th Amendment question, which is complicated, to say the least. Assuming the court were to agree, for purposes of argument, with the district court's analysis on the 12B6 issues, do you care what the court looks at the 11th Amendment issue? I care from a broader perspective, in that I don't think that this is an issue that is going to go away. Increasingly... No, but he's asking sort of a somewhat specific question, which is, are you asking us to pass on the sovereign immunity question first and regardless, or are you not? There's some suggestion in the case law that that's a choice that you may make as to whether you're asking us to pass on that question, or are you not? Are you sort of reserving that question only if you need it kind of scenario? And we need to know which of those are. In other words, if you win under the terms of the district court's order and go home, is that sufficient? I am asking the court to rule on the merits of the 11th Amendment immunity argument, and I'm doing that because regardless of whether it's this case or a case a year down the road or two years down the road, I think that the Virginia Department of Corrections and state agencies need guidance on this particular issue. Okay, what limitations do you suggest then we put? I would posit that it could be a case-dependent inquiry. When you look to the interests of the litigants before the court, where the cause of action arose, if the state had any sort of tangential connection to the litigation occurring in the foreign jurisdiction. Help us understand what a tangential connection. Give us something more than that, right? What does that mean? Because I think Judge Keenan's concern is one that I share, which is how do we identify somebody who maybe is not a party technically, but who has a sufficient connection that we're concerned about immunizing them from providing documents? This is all just perhaps. These are my suggestions. I would note that in the federal context in boron oil, it didn't matter that in that case, for example, the FBI was involved in the investigation that the state litigants were trying to seek. But I would say in this particular context, perhaps if the state were involved in an investigation, the other jurisdiction had sent officials to the other jurisdiction. Before you go on, you've now asked us to rule on this. And I think you need to answer with great specificity exactly what it is you think the court should say. I believe the court should say that the issuance of a third-party subpoena against a foreign state, a sovereign state, intrudes upon the sovereignty of that state. And absent a compelling reason to breach or waive that sovereign immunity, the state is entitled to claim that immunity and need not respond to the third-party discovery request. All right. What's the compelling reason? As I stated before, perhaps if the state officials who would be encompassed by the discovery requests had an actual and factual connection to the foreign litigation. Subpoenas regarding what subject? See, this is why I'm worried about your request. I understand, Your Honor. How are we going to fashion this rule? You're saying regard to the issuance of third-party subpoenas against the state on what subjects? Any subjects. Like I said, in the federal context, when states are attempting to subpoena the federal government, there aren't exceptions. It's a worldwide rule. But what about the example that I talked briefly about with your opponent, that there's a difference on the federal side and I think on the state side as well under Ex parte Young with individuals as opposed to agencies. So imagine this scenario. Obviously, we're not presented with it here and may well make very clear that we're not trying to reach questions that were not presented. But I want to ask you about it. What if they had subpoenaed your director instead and demanded that your director prospectively provide information?  Even acting in their official capacity and an agency or an official arm of the state? There may very well be. And I recognize that in Ex parte Young, the Supreme Court recognized that distinction. I would say I don't think that Ex parte Young really applies under these circumstances. Ex parte Young creates a limited exception to 11th Amendment immunity in cases where the official is alleged to be involved in an ongoing violation of federal constitutional law. In the discovery dispute, there's no allegation of any sort of ongoing federal constitutional violation that would trigger Ex parte Young. I don't think that that analysis comes in. I agree. I'm using that as an example. We do see another context where we treat individuals differently. So the ability, for example, instead of a 30B6 of the state to take a deposition of your director may well be a different question. It may very well be, yes. And with respect to Judge Richardson, your questions before on are we applying different standards to the federal versus state, why should it make a difference if it's flip-flopped? I don't think it makes a difference that it's flip-flopped. And I wanted to point out to the Court, the Tenth Circuit recently addressed this very issue in a case involving tribal immunity, which is narrower than state sovereign immunity. And in that case, the Tenth Circuit specifically said. Is that in your brief? It's not, Your Honor. The case is the Altel decision. But Altel expressly distinguishes state sovereign immunity, right? It did. And this is actually not Altel. This is Bonnet v. Harvest Holdings. The site is 741F3D1155. One more time. Sorry. Bonnet versus Harvest Holdings, 741F3D1155. And that is a tribal immunity case, but the quote from the case is, in order to hold the tribe as not immune in this case, which dealt with third-party subpoenas, we would have to define the same term, suit, to mean two different things depending on whether judicial process is being exercised against the United States or against a tribe. And this we declined to do. And I think that that logic directly carries over here when you take the rationale of boron oil, that you can't sue the federal, you know, that state entities can't subpoena the federal government. So you'd have to apply two different standards depending on if your litigant is the sovereign state or the federal government. I think the court should decline to do that. Ultimately, this subpoena goes right to one of the core state judicial functions, and that is imposing a lawful court order of execution, and that's part of the state's criminal justice system. It is an interest that the United States Supreme Court has recognized as being very compelling and important to the state. When you have a subpoena like this that would intrude, impede upon the exercise of that state's sovereign power, that does impede and implicate the autonomy of Virginia as a co-equal sovereign. The other circuits that have ruled on these general types of claims, all of which have agreed with your position on the merits. Correct. Have any of those addressed the 11th Amendment issue, the 6th, the 8th, I think the 11th. They have not substantively addressed it. They've declined to address it. I believe in the 8th Circuit they said, we're actually not going to touch it right now. What is your position regarding whether we can decline to address it? Do you agree we can decline to address it if we agree with you on the merits? I wish I could say yes, but I think that it's a jurisdictional defense. It goes to the subject matter jurisdiction of the court. The Supreme Court's been pretty clear that whatever the 11th Amendment immunity is, it's not subject matter jurisdiction. I understand. But this court is treated as a jurisdictional defense. So perhaps it's better phrased as the authority of the court to exercise its subject matter jurisdiction versus subject matter jurisdiction itself. But it has been treated as jurisdictional. Well, if it's treated as jurisdictional, then why does the court sometimes reach this circuit, sometimes reach the merits, and sometimes not? I would have to look at the facts of the specific case. Perhaps there's waiver consent. Okay. Well, I was thinking about the Strasser case in 2002. I'm not familiar with that case, Your Honor. You see, what's really worrying me about this case is that you said that you want us to say that issuance of a third-party subpoena against the state on any subject intrudes on that state's sovereign immunity. And then you're arguing, in this case, you're concerned about protecting Virginia's right to carry out its statutory duty upon a finding of a court and a jury of executing or carrying out the death penalty. Yes, Your Honor. That's far narrower than what you're asking us to say. So you see what I'm saying? Yes. I'm worried that you're inviting us into a quagmire. You've got to be more specific. If what you're asking us pertains only to the death penalty today, then I think you have to be more specific as to what you want us to say regarding sovereign immunity in this case. Sure. And I believe that the phrase I used before was absent a compelling reason for the state to respond. Absent a compelling reason doesn't really tell us anything, right? I mean, I don't frankly know what that means. I suspect you don't either, right? I don't. I'm trying to fashion this to respond to the Court's inquiry, and I'm trying to think of language that's used in these contexts. It's a little late, though, to be doing that. I mean, you've asked us to apply 11th Amendment immunity, which is an exceedingly difficult concept, as the Supreme Court has acknowledged a number of times. We have cases, like Judge Keenan indicated, and Strausser, and followed by the opinion in Constantine, that don't seem to embrace what you have told us to do today, but yet you're unable to distinguish those cases for us. In terms of why the necessity of ruling on immunity when there's alternative grounds before the Court? And what the rule is you want us to adopt. Well, the rule that I want the Court to adopt, perhaps I wasn't clear, was that state agencies, states, the Commonwealth of Virginia, is entitled to claim immunity from third-party discovery requests issued by a foreign jurisdiction here, the Federal District Court for the Southern District of Mississippi. Could they, you're a state AG, maybe this would help us. What if they had wanted to go to the state? Is there a state avenue that they could have gone through, Freedom of Information Act, otherwise to get information, to get similar information, maybe not exactly, from you? What are those other avenues that a litigant or an individual could use to get information from a state agency like VDOC? Certainly. Well, there is the State Freedom of Information Act. The State Freedom of Information Act, to be fair, doesn't give standing to out-of-state individuals. If you don't live in Virginia or put publications out in Virginia, you don't have standing in the Virginia Freedom of Information Act. I'm sure David Brock at W&L would be happy to step in to file that. Fair enough. But tell me, on the Freedom of Information Act context, can you get a court order compelling prompt response? I mean, I don't know, sometimes those things seem to drag out. But in cases where there is a necessity of prompt information, is that an avenue that you can go to a state court and seek sort of what I would think of as a forthwith order, asking an agency like VDOC to address the FOIA request? Absolutely. Under the Virginia Freedom of Information Act, you have five business days to submit a response. If the agency thinks they need more time, they communicate with the requestor, and they can extend, I believe, up to 10 business days. If the requestor is not satisfied with the response or a timely response is not given, they file a petition for writ of mandamus in the State Circuit Court. Are there other options? Let's take that one aside. Are there other options if litigants, and they have to have somebody in the state, I understand that, but if there are litigants that wanted information from the state, is there a different way other than FOIA to get that information? If they're state litigants as opposed to federal litigants? Well, I'm envisioning they're in a lawsuit in Mississippi. I'm envisioning this case, these litigants, but they've got somebody who can stand in as a resident of Virginia. Well, Virginia does have, and I can't remember the exact title of the statute or the citation off the top of my head, a uniform out-of-state deposition act. Virginia is a party to that. So if you're an out-of-state resident involved in out-of-state litigation and you want to subpoena an individual or information within the commonwealth of Virginia, you act pursuant to that uniform act and you file your request in a Virginia state court, which then rules on your discovery request and issues the process. Could you do that to the extent you know? I'm not asking you to stretch here, but if you were in federal court in Mississippi, could you utilize that, I'll call it uniform deposition act, whatever it is called, in order to get information? Can it go, is it just state to state, or does it allow federal court litigation to go to the state? I believe it would allow the federal litigants to avail themselves of that if the federal government is a signatory to the uniform act. So it's a tit for tat. If one state is a signatory and another state is a signatory, then you can use this act to get discovery from one another. I don't know that the federal government is a party to that uniform act, so I don't know for sure. That said, I'm happy to talk more about immunity, but I would like to briefly touch upon a couple of issues that my opposing counsel raised with respect to the district court substantive analysis in terms of the undue burden. As one of your honors noted, until we were standing here in court today, the Commonwealth of Virginia wasn't actually sure what it is that we hadn't provided that they were still interested in knowing about. The Pinto-Barbatol transaction with Texas back in 2015 was actually addressed in the testimony from the Prieto case that was provided to counsel, and it's part of the joint appendix. It's at JA-266, the testimony which references the fact that Virginia gave Pinto-Barbatol to Texas in 2013. So in 2015, when Virginia had need of it, Virginia asked Texas and Texas reciprocated. So that's addressed there. It was also addressed in the testimony of the Gray v. McAuliffe case, that particular transcript, which was before the district court as well for consideration. It was also addressed, although this document, I don't believe, made it into the record because the district court did not ask for it. There was an affidavit that was prepared for some Alabama inmates in the Arthur v. Dunn matter. If it's not in the record, then that's something you should address. I understand, but the reason I bring up the affidavit is because the Commonwealth of Virginia is not attempting to frustrate civil rights litigation in other jurisdictions. We're not trying to hide or sit on our publicly available material. We recognize that civil rights cases in other jurisdictions can be important, and so when we receive these discovery requests, we do try to voluntarily see what it is they need and provide balancing the interest of the state, our interest in not disclosing some information, with the interest of those out-of-state litigants. So in the Alabama case, for example, and this is referenced in the email that is part of the joint appendix between counsel, counsel for the Alabama inmates served a very similar 30B6 deposition, notice of deposition, and request for documents on the Virginia Department of Corrections. And we worked with the parties in that litigation to fill out an affidavit that contained all of the information about that pentobarbital transaction that they were so concerned about. Virginia certainly would have been willing to do the same thing in this case if the Mississippi litigants had stepped up to the plate and said, this is what we need. They didn't do that, and so we couldn't figure out what else it is that they wanted that wasn't encompassed by the materials that were already produced. Posting counsel said, in response to a question I asked about the district court's statement, that one of the things that bothered the court was the plaintiff's failure to reveal what information they had obtained in discovery in Mississippi, and he said that they were never asked to show that. Is that accurate, or do you know? I don't know. I know that when they filed their response to my motion to quash, that is information that could have been put in their response to my motion for quash. Because you need to show for a Rule 45 subpoena, one of the things the court can consider is the availability of the information from another source. And so that's why the district court judge said, I find that this information could be available through Mississippi, and they haven't alleged or pleaded or made any representations that is not available through Mississippi. And I think that was an appropriate consideration for the district court to make. And that also ties into the reasoning on the notice of deposition versus the corresponding subpoena de susticum for documents. The court kind of treated those hand-in-hand in its memorandum opinion and addressed the broad categories of the notice of deposition with the documents, the notice of deposition with the documents, because the court is trying to determine, is the information available from another source? The extensive testimony that was provided in the Gravy-McAuliffe case, and that was provided to counsel. The extensive testimony that was provided in pre-atom was given to counsel. Is an alternative source of information, and that's something that's appropriate for the court to consider in its Rule 45 balancing request. Now, ultimately, Your Honors, if you strip away all of the descriptives in this case, you take away lethal injection, you take away execution, you take away death row, all of that stuff, and you just consider this discovery dispute on its base facts, it's clear that the judgment below should be affirmed. You have out-of-state litigants who issued an overbroad, not narrowly tailored, extraordinarily lengthy Rule 30b6 notice of deposition and subpoena on a sovereign state. The state attempted, in a good faith effort to avoid having to come to court, attempted to give them what they needed. They weren't satisfied, and they pressed for more. The district court did a very detailed and lengthy analysis of why the subpoena was overbroad, why it posed an undue burden on the Commonwealth of Virginia, and that judgment was not an abuse of discretion. So for those reasons, Your Honors, we would ask that this court affirm the judgment below, either finding that the state has sovereign immunity and or that the substantive merits of the decision were correct. Thank you. Thank you. Mr. Craig, you've got some time left in rebuttal. Thank you. So this may replow ground from before, but do you think that the court is required to address  No, Your Honor, for at least three reasons. I'll cover the bad reason first. If the court affirms the district court in all respects in granting the motion to quash, then the 11th Amendment issue is really not before the court because the district court didn't address it. And so anything that the court would say if it were to address the 11th Amendment could be considered dicta, and this is not the appropriate case for that. I mean, that ignores Vermont agency and Constantine. I mean, all these cases that say whatever it is, maybe it's quasi-jurisdictional, that it can be raised to a sponte by the court. I mean, if they didn't even argue it, the court could raise it. So it wouldn't be dicta of the court. It's an order of decision that is required. And so maybe go to the next reason. Thank you, Your Honor. If I may just push back against that a little bit, I think if the court were to say the district court is correct in all respects and we need not consider the 11th Amendment issue in that context, I agree with you that the court can raise it. But why is that? Do you have support for that? I mean, I understand the statement, but why? I think because if the court, well, as the court said, if it's at most quasi-jurisdictional, I don't think the court has to address it if it is otherwise affirming the opinion of the district court. Let me just say that two other reasons that I think are pretty solid as well. The first is, you know, we issued the subpoena, but the party that invoked the jurisdiction of the district court in Virginia was the Virginia Department of Corrections. They didn't object to the subpoena and require us to file a motion to compel. They affirmatively filed a motion to quash the subpoena, which invoked the jurisdiction of the district court. Didn't they have to have a vehicle, though, in order to assert the 11th Amendment immunity? They did have a vehicle, Your Honor, and that would have been to wait for us to file a motion to compel and then assert the 11th Amendment in defense. That's not what they did here. They filed affirmatively a motion to quash. You can't waive. That's one of the challenges is that you can't waive by conduct. So the same reason, they could have just waited and raised it on appeal, and we would recognize it in that context. I don't think of that as waiver, Your Honor. I think of it as the same as if the state of Virginia had filed its own case in federal court and asked us to respond. They're going to invoke an 11th Amendment. They can't file a motion to quash on 11th Amendment grounds. Your position is if you're filing a motion to quash, it cannot be on 11th Amendment grounds. That's our position because you are invoking the jurisdiction of the court to enter an order quashing the subpoena. So if you're saying the court doesn't have jurisdiction, you don't have the power to do that. And there is a vehicle. What's the third reason? Because this is important. Yes, it is. The third reason is similar to that, which would be a conduct-based reason, which is that they responded to the subpoena. They didn't object in toto. They responded. They provided documents. But they did not provide us a vehicle for inquiring about the documents that they submitted to us. Let me just take for an example. The testimony counsel opposite referred to that were excerpts from the testimony of cases in Virginia about that 2015 Texas transaction. They provided the testimony in prior testimony, which we can't use. It's not necessarily admissible in the Mississippi action. Nor would an affidavit be in the actual trial in the merits. But they did provide the documents in response to the subpoena. They didn't just hand us the documents because they wanted to. They provided the documents in response to the subpoena, and then they invoked the jurisdiction of the court to resist the rest of the subpoena. And we think that that is plenty enough reason for this court to decline to consider the 11th Amendment in this context. I don't think that the issues are fleshed out with any level of specificity to allow this court to write what would be probably the first opinion of its type related to a state sovereign. It's just not the right case for it, and there are plenty of reasons to decline to address that issue. I will simply say in one sentence, summation, that we ask the court to vacate the district court's order to issue a ruling that we are entitled to depose on the documents that have already been produced, and that we are entitled to the documents related to the Texas transaction and the documents listed on their privilege log, which we briefed, related to actual executions in Virginia. Thank you, Your Honors. Thank you very much. I'll ask the clerk to adjourn the court, and we'll come down and greet counsel.
judges: G. Steven Agee, Barbara Milano Keenan, Julius N. Richardson